**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **HOSPITAL DISTRICT NO. 1 OF** ) | |
| **CRAWFORD COUNTY, KANSAS,** ) | |
| **d/b/a GIRARD MEDICAL CENTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.** 12-cv-2025 JWL/JPO |
| ) | **Crawford County Court No. 11CV304P** |
| **CERNER CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

**NOTICE OF REMOVAL**

Defendant Cerner Corporation ("Cerner") files this Notice of Removal of this lawsuit
from the District Court of Crawford County, Kansas, to the United States District Court for the
District of Kansas pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

1.      On December 6, 2011, Plaintiff Hospital District No. 1 of Crawford County,
Kansas, d/b/a Girard Medical Center ("Plaintiff"), filed its Petition for Damages against Cerner.
The case is styled *Hospital District No. 1 of Crawford County, Kansas, d/b/a Girard Medical
Center v. Cerner Corporation*, No. 11CV304P.

2.      On December 16, 2011, Cerner was served with a copy of a summons and
Plaintiff's Petition. The time to remove this action has not expired, and no previous application
for removal has been made.

3.      Plaintiff is a county hospital in the state of Kansas, located at 302 North Hospital
Drive, Girard, Kansas 66743. *See* Petition for Damages ("Petition"), ¶ 1 (attached as Ex. A).
Plaintiff is a citizen of the state of Kansas.

1

4. Cerner is a Delaware Corporation with its principal place of business located at 2800 Rock Creek Parkway, Kansas City, Missouri 64117. Cerner is a citizen of the states of Delaware and Missouri.

5. Plaintiff is seeking damages in excess of $75,000. *See* Petition, ¶¶ 37, 43, 48, 52, 59, and 68.

6. Based on the information set forth above, this Court has original diversity jurisdiction under 28 U.S.C. § 1332.

7. Pursuant to 28 U.S.C. § 1446, a copy of all process, pleadings, and orders served upon Cerner are attached as Exhibit B.

8. Thirty days have not passed since Cerner's receipt of the initial pleading in this case, and removal is timely under 28 U.S.C. § 1446(b).

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the clerk of the District Court of Crawford County, Kansas, with written notice submitted to Plaintiff. A copy of the notice to the state court is attached as Exhibit C.

10. This action is being removed to the United States District Court for the district where the action is pending.

WHEREFORE Defendant Cerner Corporation respectfully requests that Plaintiffs' Petition for Damages be removed, pursuant to 28 U.S.C. § 1441(a), from the District Court of Crawford County, Kansas, to the United States District Court for the District of Kansas on the basis of this Notice of Removal, and that this Court take jurisdiction of this action to the exclusion of any further proceedings in the District Court of Crawford County, Kansas.

Date: January 13, 2012

2

4835349 v1

SHOOK, HARDY & BACON L.L.P.

By: ___ /s/ Bradley Bodamer ___

A. BRADLEY BODAMER, KS #11468
2555 GRAND BLVD.
KANSAS CITY, MO 64108-2613
P: 816.474.6550
F: 816.421.5547
bbodamer@shb.com
ATTORNEYS FOR DEFENDANT
CERNER CORPORATION

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that the foregoing document was served this ___ day of January 2012, on the parties listed below in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules:

Frankie J. Forbes
Blane R. Markley
The Forbes Law Group, LLC
10740 Nall Avenue, Suite 330
Overland Park, KS 66211
P: 913.341.8609
F: 913.341.8606
Attorneys for Plaintiff

The Clerk of the District Court for Crawford County, Kansas
Crawford County District Court
602 N. Locust
Pittsburg, Kansas 66762
P: 620.231-0380
F: 620.231.0316

/s/ Bradley Bodamer ___
A. Bradley Bodamer

3

# Ex. A

FILED

IN THE DISTRICT COURT OF CRAWFORD COUNTY, KANSAS
CIVIL DIVISION    '11 DEC -6 AM :40

HOSPITAL DISTRICT NO. 1 OF
CRAWFORD COUNTY, KANSAS,
d/b/a GIRARD MEDICAL CENTER

CLERK OF DIST. COUR·
CRAWFORD COUNTY
BY_____

Plaintiff,

v.                                              Case No.   )1C0304ₚ
                                                Chapter 60
CERNER CORPORATION                              Div.
   Serve its Resident Agent:
   The Corporation Company, Inc.
   112 SW 7th Street, Suite 3C
   Topeka, KS 66603

Defendant.

## PETITION FOR DAMAGES

COMES NOW Plaintiff, Hospital District No. 1 of Crawford County, Kansas,

d/b/a Girard Medical Center ("Hospital"), by and through counsel, Frankie J. Forbes and

Blane R. Markley of Forbes Law Group, LLC, and for its causes of action against

Defendant, states and alleges as follows:

1.      Plaintiff, Hospital is a county hospital in the state of Kansas, located at

302 North Hospital Drive, Girard, Kansas 66743.

2.      Defendant Cerner Corporation ("Cerner"), is a Delaware Corporation

registered and in good standing with the Kansas Secretary of State as a foreign for profit

corporation with its headquarters currently located at 2800 Rock Creek Parkway, Kansas

City, MO 64117 and can be served by its Resident Agent, The Corporation Company,

Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

3.      All events and transactions occurred in Crawford County, Kansas.

4.      Both venue and jurisdiction are proper in this Court.

1

## STATEMENT OF FACTS

5.      Hospital and entered into a series of agreements included in a Cerner System Schedule No. 3 on or about September 30, 2010. ("Agreement" attached hereto as Exhibit A).

6.      The Agreement was for the sale of equipment, license of software, sublicense of software, subscriptions, maintenance, and other products and services related to the implementation of an Electronic Health Record ("EHR") system and other computer hardware and software products for Hospital. (hereinafter collectively referred to as "System").

7.      The initial proposed cost to the Hospital for the System was approximately $2,900,000, with payments structured based upon progress and the provision of services.

8.      To date, Hospital has paid approximately $1,290,000 to Cerner despite not being provided any tangible work product.

9.      To induce the sale of Cerner's products, Cerner employees represented to Hospital's Board of Trustees at its August 2010 meeting that:

    a.  That the System would be a "Fully Integrated" solution. *Ex. A, p. 2*

    b.  Cerner would provide a "Predictable implementation timeline. *Ex. A., p. 2*

    c.  Cerner is a "Trusted vendor/partner". *Ex. A., p. 2*

    d.  Cerner is dedicated to healthcare and has provided a System to "Over 70 Critical Access Hospitals." *Ex., A. p. 3*

    e.  Cerner offered "A single, integrated, comprehensive healthcare architecture." *Ex. A., p. 3; Ex. C.,*

2

f. Community Works was a business unit of Cerner that was focused on Critical Access and Community Hospital market that provided a "complete offering." *Ex. A., p. 6*

g. "Implementation (months not years)" *Ex. A., p.6*

h. Cerner's solution offered focus, including meaningful use. *Ex. A., p. 6*

i. Cerner offered "Comprehensive Solutions" which included general financials, clinical suite, laboratory suite, radiology suite, surgical suite, emergency department suite, and patient management and accounting, clinic/practice suite. *Ex. A., p. 8; Ex. C., p. 2*

j. The System included human resources, payroll with salary, deductions, payments and "Time and Attendance" functionality. *Ex. B., p. 48; Ex. C., p. 2*

k. The System implementation would be completed by September 1, 2011 to qualify the first United States Department of Health and Human Services meaningful use requirements to receive the Medicare and Medicaid Electronic Health Records incentive payments, which would enable the Hospital to be able to afford the System. *Ex. B., p. 39 & 42; Ex. C., p. 2*

10. Hospital and Cerner entered the Agreement on September 30, 2010.

11. After the Agreement was signed, it became clear that there were discrepancies in the products and services that Cerner was going to deliver and what it had promised prior to execution of the Agreement.

12. One of the material components of the System for Hospital was "time and attendance" to integrate Hospital's human resource and payroll functions.

3

13.     The "time and attendance" functionality of the System was a fundamental and material function that Hospital relied upon in making its decision to contract with Cerner for the System.

14.     After the Agreement was signed, Cerner revealed that the "time and attendance" functionality was not included in the "comprehensive and fully integrated" System that was to be a "complete offering" to critical access hospitals like Hospital.

15.     Cerner representatives suggested that Hospital fulfill its need for promised, but not delivered "time and attendance" system, with an Excel spreadsheet.

16.     When Hospital rejected the Excel spreadsheet suggestion, Cerner forced Hospital to renegotiate and drop the Home Health Module of the System. Cerner asserted this was a "cost neutral" amendment with perhaps a "slight increase" in maintenance costs. Despite these representations, as a result of the changes, the monthly maintenance fees increased by 28%.

17.     When questioned regarding the "time and attendance" and other discrepancies between what Cerner promised and what it was delivering during a September 9, 2011 conference call, Cerner representatives cavalierly dismissed the issues.

18.     To induce the sale of Cerner's products, Cerner employees represented to Hospital's Board of Trustees at its August 2010 meeting that the System would be completed by September 2011 and meet the United States Department of Health and Human Services meaningful use requirements to receive the Medicare and Medicaid Electronic Health Records incentive payments and enable Hospital to afford the System.

4

19.    Cerner has failed to make any material progress in implementing the System and as a result, Hospital will not be able to meet the deadlines and other requirements for the Medicare and Medicaid Electronic Health Records incentive payments.

20.    The Cerner staff that was deployed to Hospital to implement the System lacked experience in healthcare and basic maturity.

21.    Cerner staff failed to provide consistent answers to questions and their knowledge of Cerner products and healthcare industry.

22.    Cerner staff has been overheard commenting that Cerner was able to get Hospital to agree to the Agreement as a result of "concert tickets and booze."

23.    Cerner staff has been overheard commenting that they "are only here because [they] drew the short straw."

24.    Throughout the period when Cerner was allegedly attempting to implement the System, its staff continually provided inaccurate price quotes on additions and changes to the system in an effort to induce Hospital to accept the addition and changes. This included the microbiology component of the System which was quoted at $24,000 and later increased to $70,000.

25.    Hospital provided notice to Cerner that on several occasions that it was in breach of the Agreement and that Hospital had recognized that Cerner had inaccurately represented the System and the implementation of the System to induce Hospital to enter into the Agreement.

26.    On August 5, 2011, Hospital CEO Michael Payne sent an e-mail to Eric Geis of Cerner which provided a detailed list on ongoing issues.

5

27.     In August or September 2011, Cerner representatives notified Hospital's mid-level management of their desire to discontinue its services and was abandoning the project to implement the System after receiving approximately $1,290,000 from Hospital.

28.     On September 21, 2011, Hospital, through the undersigned counsel, submitted a letter to Cerner's management demanding repayment of all payments made to Cerner because of its abandonment of the project to implement the System, misrepresentations, failure to timely implement the system and disparaging attitudes and comments of its employees.

## COUNT I - BREACH OF CONTRACT

29.     Hospital incorporates by reference paragraphs 1 through 29 of its Petition as if fully set forth herein.

30.     Hospital and Cerner entered the Agreement on September 10, 2010, which obligated Cerner to implement the System as proposed to Hospital's Board of Trustees which met the performance and scope of capabilities and implementation schedule as represented by Cerner staff and as set forth in the Agreement.

31.     Cerner breached the Agreement by failing to provide a fully integrated and comprehensive System and a System including the performance and scope of capabilities, including the "time and attendance" functions, as provided in the Agreement and as represented by Cerner staff.

32.     Cerner breached the Agreement by abandoning the implementation of the System.

6

33.     Cerner breached the Agreement by failing to implement the System in timely manner to enable Hosptial to receive the Medicare and Medicaid Electronic Health Records incentive payments.

34.     Cerner breached the Agreement by failing to deploy competent staff to implement the System.

35.     Cerner breached the Agreement by not providing the Home Health Module and causing Hospital to remove the Home Health Module from the System in exchange for the "time and attendance" functionality of the System.

36.     Hospital has satisfied its obligations under the Agreement.

37.     As a direct result of Cerner's breaches of the Agreement, Hospital has sustained damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count I against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

**COUNT II - NEGLIGENT MISREPRESENTATION**

38.     Hospital incorporates by reference paragraphs 1 through 37 of its Petition as if fully set forth herein.

39.     Cerner's representations described in paragraphs 9, 11-14, 16, 18, and 27 above constitute false information supplied by Cerner to guide Hospital into entering into, expanding, and continuing in the Agreement.

40.     The information was false, the System was not "Comprehensive" and "Fully Integrated" did not include "time and attendance" as represented, other elements

7

of the System which were promised but not delivered, the exchange of the Home Health Module for "time and attendance" was not "cost neutral" or a "slight increase", Cerner could not deliver the System to meet the functionality and timing requirements for Hospital to obtain the Medicare and Medicaid Electronic Health Records incentive payments, and the representation that Cerner would deliver the System but later abandoned the implementation of the System after having received $1,290,000 from Hospital.

41.     Cerner failed to exercise reasonable care or competence in communicating the false information to Hospital.

42.     Hospital reasonably relied upon the information and Cerner knew that Hospital was so relying on the information to enter into the Agreement (including calculating its ability to pay for the System), additions to the Agreement, and continuation of the Agreement.

43.     As a direct and proximate result of Cerner's negligent misrepresentations, Hospital has sustained damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count II against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

## COUNT III - FRAUD

44.     Hospital incorporates by reference paragraphs 1 through 43 of its Petition as if fully set forth herein.

8

45.     Cerner's representations described in paragraphs 9, 11-14, 16, 18, and 27 above were false and were known by Cerner to be false at the time they were made, or the representations were recklessly made without knowledge concerning the representations. The representations were known by Cerner to be false because Cerner knew the System they were intending to deliver was not "Comprehensive" and "Fully Integrated" and was going to include the "time and attendance" functionality, knew that the substitution of the Home Health Module for the "time and attendance" functionality would not be "cost neutral" or a "slight increase", knew that it would not be able to implement the System in a timely manner to enable Hospital to receive the Medicare and Medicaid Electronic Health Record incentive payments, and knew that it was incapable of implementing the System and knowingly abandoned the implementation after receiving $1,290,000 from Hospital.

46.     The false representations were intentionally made for the purpose of inducing Hospital's all-volunteer Board of Trustees and management to enter into the Agreement, continue the Agreement, and expand the Agreement.

47.     Hospital, its all-volunteer Board of Trustees and management all reasonably relied and acted upon the false representations.

48.     As a direct and proximate result of relying upon the false representations, Hospital has sustained monetary damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count III against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

9

## COUNT IV –BREACH OF COVENANT OF GOOD FAITH

### AND FAIR DEALING

49.     Hospital incorporates by reference paragraphs 1 through 48 of its Petition as if fully set forth herein.

50.     Under Kansas law, the Agreement contains the implied covenant that Cerner must act in good faith and with fair dealing toward the defendants.

51.     Cerner breached its covenant of good faith and fair dealing in the Agreement in at least the following respects:

> a. Representing that the System was "Comprehensive" and "Fully Integrated" and included the "time and attendance" functionality.
>
> b. Suggesting that Hospital use an Excel spreadsheet when it was discovered that Cerner misrepresented that the System would include "time and attendance".
>
> c. By providing inaccurate price quotes for additions or changes to the System.  For example, the quote for the microbiology component was $24,000, later the price was increased to $70,000.
>
> d. Representing that the trade for the Home Health Module for "time and attendance" would be "cost neutral" or a "slight increase" when the increase was in fact substantial.
>
> e. Representing that the System would be implemented in a timely manner ("Months not years") to enable Hospital to receive the Medicare and Medicaid Electronic Health Record incentive payments.

10

f. By abandoning the implementation of the System after receiving $1,290,000 from Hospital.

52. As a direct and proximate result of Cerner's breach of their covenant of good faith and fair dealing, Hospital has sustained monetary damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count IV against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

## COUNT V - NEGLIGENCE

53. Hospital incorporates by reference paragraphs 1 through 52 of its Petition as if fully set forth herein.

54. In offering to implement the System and entering an Agreement to implement the System, Hospital had a close relationship with Cerner's employees who were principally involved in selling the System, managing its implementation, directly involved with its implementation.

55. Hospital relied upon the represented experience and proficiency of Cerner and its employees to implement the System as Hospital lacked the requisite knowledge and sophistication to design, develop and implement solutions comparable to the System.

56. Cerner possessed a fiduciary relationship with Hospital, rather than a mere distant business relationship.

57. As a result, Cerner owed certain duties to Hospital, including but not limited to a duty to perform in accordance with industry standards.

11

58.    Cerner breached these duties by:

    a.   Negligently assigning incompetent staff to implement the System.

    b.   Negligently implementing the System and in fact did so below a level that is required by common industry standards.

59.    As a direct and proximate result of Cerner's negligence, Hosptial has sustained and suffered damages in an amount in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count V against the Defendant Cerner for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

### COUNT VI – BREACH OF FIDUCIARY DUTY

60.    Hospital incorporates by reference paragraphs 1 through 59 of its Petition as if fully set forth herein.

61.    In offering to implement the System and entering an Agreement to implement the System, Hospital had a close relationship with Cerner's employees who were principally involved in selling the System, managing its implementation, directly involved with its implementation.

62.    Hospital relied upon the represented experience and proficiency of Cerner and its employees to implement the System as Hospital lacked the requisite knowledge and sophistication to design, develop and implement solutions comparable to the System.

63.    As a result of the represented knowledge, sophistication and experience, Hospital relied heavily on the representations and advice of Cerner and Cerner knew they were relying upon such advice.

12

64.    Cerner possessed a fiduciary relationship with Hospital, rather than a mere distant business relationship.

65.    Hospital relied upon the representations and advice of Cerner, all to its great financial detriment.

66.    As a result, Cerner owed certain duties to Hospital, including but not limited to a duty to perform in accordance with industry standards.

67.    Cerner breached these duties by:

    a. Negligently assigning incompetent staff to implement the System.

    b. Negligently implementing the System and in fact did so below a level that is required by common industry standards.

68.    As a direct and proximate result of Cerner's negligence, Hospital has sustained and suffered damages in an amount in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count VI against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

THE FORBES LAW GROUP, LLC

Frankie J. Forbes, KS #20725
Blane R. Markley, KS # 23262
10740 Nall Avenue, Suite 330
Overland Park, KS 66211
Telephone: 913-341-8609
Facsimile: 913-341-8606
ATTORNEYS FOR PLAINTIFF

13

# Ex. B

IN THE DISTRICT COURT OF CRAWFORD COUNTY, KANSAS
CIVIL DIVISION

HOSPITAL DISTRICT NO. 1 OF
CRAWFORD COUNTY, KANSAS,
d/b/a GIRARD MEDICAL CENTER

Plaintiff,

v.                                                          Case No.   *1CV304*
                                                            Chapter 60
CERNER CORPORATION                                          Div.
        Serve its Resident Agent:
        The Corporation Company, Inc.
        112 SW 7th Street, Suite 3C
        Topeka, KS 66603

Defendant.

## SUMMONS

To:     CERNER CORPORATION

        A lawsuit has been filed against you.

        Within (21) days after service of this summons on you (not counting the day

you received it), you must serve on the plaintiff an answer to the attached petition or

a motion under K.S.A. 60-212.   The answer or motion must be served on the

plaintiff's attorney, or the plaintiff if plaintiff has no attorney, at the following

address:

        Blane R. Markley, Forbes Law Group, LLC
        10790 Nall Avenue
        Overland Park, KS 66211

        If you fail to file an answer or motion as described above, judgment by

default will be entered against you for the relief demanded in the petition.   You also

must file your answer or motion with the court.

If you file an answer, any related claim which you may have against the plaintiff must be stated as a counterclaim in your answer.  If you fail to do so you will thereafter be barred from making such claim in any other action.

Date _12-6-11_

Clerk's Seal

Clerk of the District Court.

By _____
        Deputy

**IN THE DISTRICT COURT OF CRAWFORD COUNTY, KANSAS**

FILED

**CIVIL DIVISION**

HOSPITAL DISTRICT NO. 1 OF
CRAWFORD COUNTY, KANSAS,
d/b/a GIRARD MEDICAL CENTER

'11  DEC -6  AM :44

CLERK OF DIST. COURT
CRAWFORD COUNTY

                    Plaintiff,         BY_____

v.

                                        Case No.  *11CV304*
                                        Chapter 60
CERNER CORPORATION                      Div.
        Serve its Resident Agent:
        The Corporation Company, Inc.
        112 SW 7th Street, Suite 3C
        Topeka, KS 66603

                    Defendant.

## SUMMONS

To:    **CERNER CORPORATION**

       A lawsuit has been filed against you.

       Within (21) days after service of this summons on you (not counting the day

you received it), you must serve on the plaintiff an answer to the attached petition or

a motion under K.S.A. 60-212. The answer or motion must be served on the

plaintiff's attorney, or the plaintiff if plaintiff has no attorney, at the following

address:

               Blane R. Markley, Forbes Law Group, LLC
               10790 Nall Avenue
               Overland Park, KS 66211

       If you fail to file an answer or motion as described above, judgment by

default will be entered against you for the relief demanded in the petition. You also

must file your answer or motion with the court.

If you file an answer, any related claim which you may have against the plaintiff must be stated as a counterclaim in your answer. If you fail to do so you will thereafter be barred from making such claim in any other action.

Date _12-6-11_

Clerk's Seal

Clerk of the District Court.

By _____

Deputy

FILED

IN THE DISTRICT COURT OF CRAWFORD COUNTY, KANSAS
CIVIL DIVISION

'11 DEC -6 A10 :40

HOSPITAL DISTRICT NO. 1 OF
CRAWFORD COUNTY, KANSAS,
d/b/a GIRARD MEDICAL CENTER

Plaintiff,

v.

CERNER CORPORATION
Serve its Resident Agent:
The Corporation Company, Inc.
112 SW 7th Street, Suite 3C
Topeka, KS 66603

Defendant.

CLERK OF DIST. COUR:
CRAWFORD COUNTY

BY_____

Case No.
Chapter 60   11CV304P
Div.

## PETITION FOR DAMAGES

COMES NOW Plaintiff, Hospital District No. 1 of Crawford County, Kansas,

d/b/a Girard Medical Center ("Hospital"), by and through counsel, Frankie J. Forbes and

Blane R. Markley of Forbes Law Group, LLC, and for its causes of action against

Defendant, states and alleges as follows:

1.      Plaintiff, Hospital is a county hospital in the state of Kansas, located at

302 North Hospital Drive, Girard, Kansas 66743.

2.      Defendant Cerner Corporation ("Cerner"), is a Delaware Corporation

registered and in good standing with the Kansas Secretary of State as a foreign for profit

corporation with its headquarters currently located at 2800 Rock Creek Parkway, Kansas

City, MO 64117 and can be served by its Resident Agent, The Corporation Company,

Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

3.      All events and transactions occurred in Crawford County, Kansas.

4.      Both venue and jurisdiction are proper in this Court.

1

## STATEMENT OF FACTS

5.      Hospital and entered into a series of agreements included in a Cerner System Schedule No. 3 on or about September 30, 2010. ("Agreement" attached hereto as Exhibit A).

6.      The Agreement was for the sale of equipment, license of software, sublicense of software, subscriptions, maintenance, and other products and services related to the implementation of an Electronic Health Record ("EHR") system and other computer hardware and software products for Hospital. (hereinafter collectively referred to as "System").

7.      The initial proposed cost to the Hospital for the System was approximately $2,900,000, with payments structured based upon progress and the provision of services.

8.      To date, Hospital has paid approximately $1,290,000 to Cerner despite not being provided any tangible work product.

9.      To induce the sale of Cerner's products, Cerner employees represented to Hospital's Board of Trustees at its August 2010 meeting that:

   a.  That the System would be a "Fully Integrated" solution. *Ex. A, p. 2*

   b.  Cerner would provide a "Predictable implementation timeline. *Ex. A., p. 2*

   c.  Cerner is a "Trusted vendor/partner". *Ex. A., p. 2*

   d.  Cerner is dedicated to healthcare and has provided a System to "Over 70 Critical Access Hospitals." *Ex., A. p. 3*

   e.  Cerner offered "A single, integrated, comprehensive healthcare architecture." *Ex. A., p. 3; Ex. C.,*

2

f.  Community Works was a business unit of Cerner that was focused on Critical Access and Community Hospital market that provided a "complete offering." *Ex. A., p. 6*

g.  "Implementation (months not years)" *Ex. A., p.6*

h.  Cerner's solution offered focus, including meaningful use. *Ex. A., p. 6*

i.  Cerner offered "Comprehensive Solutions" which included general financials, clinical suite, laboratory suite, radiology suite, surgical suite, emergency department suite, and patient management and accounting, clinic/practice suite. *Ex. A., p. 8; Ex. C., p. 2*

j.  The System included human resources, payroll with salary, deductions, payments and "Time and Attendance" functionality. *Ex. B., p. 48; Ex. C., p. 2*

k.  The System implementation would be completed by September 1, 2011 to qualify the first United States Department of Health and Human Services meaningful use requirements to receive the Medicare and Medicaid Electronic Health Records incentive payments, which would enable the Hospital to be able to afford the System. *Ex. B., p. 39 & 42; Ex. C., p. 2*

10.  Hospital and Cerner entered the Agreement on September 30, 2010.

11.  After the Agreement was signed, it became clear that there were discrepancies in the products and services that Cerner was going to deliver and what it had promised prior to execution of the Agreement.

12.  One of the material components of the System for Hospital was "time and attendance" to integrate Hospital's human resource and payroll functions.

3

13.     The "time and attendance" functionality of the System was a fundamental and material function that Hospital relied upon in making its decision to contract with Cerner for the System.

14.     After the Agreement was signed, Cerner revealed that the "time and attendance" functionality was not included in the "comprehensive and fully integrated" System that was to be a "complete offering" to critical access hospitals like Hospital.

15.     Cerner representatives suggested that Hospital fulfill its need for promised, but not delivered "time and attendance" system, with an Excel spreadsheet.

16.     When Hospital rejected the Excel spreadsheet suggestion, Cerner forced Hospital to renegotiate and drop the Home Health Module of the System. Cerner asserted this was a "cost neutral" amendment with perhaps a "slight increase" in maintenance costs. Despite these representations, as a result of the changes, the monthly maintenance fees increased by 28%.

17.     When questioned regarding the "time and attendance" and other discrepancies between what Cerner promised and what it was delivering during a September 9, 2011 conference call, Cerner representatives cavalierly dismissed the issues.

18.     To induce the sale of Cerner's products, Cerner employees represented to Hospital's Board of Trustees at its August 2010 meeting that the System would be completed by September 2011 and meet the United States Department of Health and Human Services meaningful use requirements to receive the Medicare and Medicaid Electronic Health Records incentive payments and enable Hospital to afford the System.

4

19. Cerner has failed to make any material progress in implementing the System and as a result, Hospital will not be able to meet the deadlines and other requirements for the Medicare and Medicaid Electronic Health Records incentive payments.

20. The Cerner staff that was deployed to Hospital to implement the System lacked experience in healthcare and basic maturity.

21. Cerner staff failed to provide consistent answers to questions and their knowledge of Cerner products and healthcare industry.

22. Cerner staff has been overheard commenting that Cerner was able to get Hospital to agree to the Agreement as a result of "concert tickets and booze."

23. Cerner staff has been overheard commenting that they "are only here because [they] drew the short straw."

24. Throughout the period when Cerner was allegedly attempting to implement the System, its staff continually provided inaccurate price quotes on additions and changes to the system in an effort to induce Hospital to accept the addition and changes. This included the microbiology component of the System which was quoted at $24,000 and later increased to $70,000.

25. Hospital provided notice to Cerner that on several occasions that it was in breach of the Agreement and that Hospital had recognized that Cerner had inaccurately represented the System and the implementation of the System to induce Hospital to enter into the Agreement.

26. On August 5, 2011, Hospital CEO Michael Payne sent an e-mail to Eric Geis of Cerner which provided a detailed list on ongoing issues.

5

27.     In August or September 2011, Cerner representatives notified Hospital's mid-level management of their desire to discontinue its services and was abandoning the project to implement the System after receiving approximately $1,290,000 from Hospital.

28.     On September 21, 2011, Hospital, through the undersigned counsel, submitted a letter to Cerner's management demanding repayment of all payments made to Cerner because of its abandonment of the project to implement the System, misrepresentations, failure to timely implement the system and disparaging attitudes and comments of its employees.

## COUNT I - BREACH OF CONTRACT

29.     Hospital incorporates by reference paragraphs 1 through 29 of its Petition as if fully set forth herein.

30.     Hospital and Cerner entered the Agreement on September 10, 2010, which obligated Cerner to implement the System as proposed to Hospital's Board of Trustees which met the performance and scope of capabilities and implementation schedule as represented by Cerner staff and as set forth in the Agreement.

31.     Cerner breached the Agreement by failing to provide a fully integrated and comprehensive System and a System including the performance and scope of capabilities, including the "time and attendance" functions, as provided in the Agreement and as represented by Cerner staff.

32.     Cerner breached the Agreement by abandoning the implementation of the System.

6

33.    Cerner breached the Agreement by failing to implement the System in timely manner to enable Hosptial to receive the Medicare and Medicaid Electronic Health Records incentive payments.

34.    Cerner breached the Agreement by failing to deploy competent staff to implement the System.

35.    Cerner breached the Agreement by not providing the Home Health Module and causing Hospital to remove the Home Health Module from the System in exchange for the "time and attendance" functionality of the System.

36.    Hospital has satisfied its obligations under the Agreement.

37.    As a direct result of Cerner's breaches of the Agreement, Hospital has sustained damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count I against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

## COUNT II - NEGLIGENT MISREPRESENTATION

38.    Hospital incorporates by reference paragraphs 1 through 37 of its Petition as if fully set forth herein.

39.    Cerner's representations described in paragraphs 9, 11-14, 16, 18, and 27 above constitute false information supplied by Cerner to guide Hospital into entering into, expanding, and continuing in the Agreement.

40.    The information was false, the System was not "Comprehensive" and "Fully Integrated" did not include "time and attendance" as represented, other elements

7

of the System which were promised but not delivered, the exchange of the Home Health Module for "time and attendance" was not "cost neutral" or a "slight increase", Cerner could not deliver the System to meet the functionality and timing requirements for Hospital to obtain the Medicare and Medicaid Electronic Health Records incentive payments, and the representation that Cerner would deliver the System but later abandoned the implementation of the System after having received $1,290,000 from Hospital.

41.     Cerner failed to exercise reasonable care or competence in communicating the false information to Hospital.

42.     Hospital reasonably relied upon the information and Cerner knew that Hospital was so relying on the information to enter into the Agreement (including calculating its ability to pay for the System), additions to the Agreement, and continuation of the Agreement.

43.     As a direct and proximate result of Cerner's negligent misrepresentations, Hospital has sustained damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count II against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

## COUNT III - FRAUD

44.     Hospital incorporates by reference paragraphs 1 through 43 of its Petition as if fully set forth herein.

8

45. Cerner's representations described in paragraphs 9, 11-14, 16, 18, and 27 above were false and were known by Cerner to be false at the time they were made, or the representations were recklessly made without knowledge concerning the representations. The representations were known by Cerner to be false because Cerner knew the System they were intending to deliver was not "Comprehensive" and "Fully Integrated" and was going to include the "time and attendance" functionality, knew that the substitution of the Home Health Module for the "time and attendance" functionality would not be "cost neutral" or a "slight increase", knew that it would not be able to implement the System in a timely manner to enable Hospital to receive the Medicare and Medicaid Electronic Health Record incentive payments, and knew that it was incapable of implementing the System and knowingly abandoned the implementation after receiving $1,290,000 from Hospital.

46. The false representations were intentionally made for the purpose of inducing Hospital's all-volunteer Board of Trustees and management to enter into the Agreement, continue the Agreement, and expand the Agreement.

47. Hospital, its all-volunteer Board of Trustees and management all reasonably relied and acted upon the false representations.

48. As a direct and proximate result of relying upon the false representations, Hospital has sustained monetary damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count III against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

9

## COUNT IV – BREACH OF COVENANT OF GOOD FAITH

### AND FAIR DEALING

49.     Hospital incorporates by reference paragraphs 1 through 48 of its Petition as if fully set forth herein.

50.     Under Kansas law, the Agreement contains the implied covenant that Cerner must act in good faith and with fair dealing toward the defendants.

51.     Cerner breached its covenant of good faith and fair dealing in the Agreement in at least the following respects:

  a.  Representing that the System was "Comprehensive" and "Fully Integrated" and included the "time and attendance" functionality.

  b.  Suggesting that Hospital use an Excel spreadsheet when it was discovered that Cerner misrepresented that the System would include "time and attendance".

  c.  By providing inaccurate price quotes for additions or changes to the System.  For example, the quote for the microbiology component was $24,000, later the price was increased to $70,000.

  d.  Representing that the trade for the Home Health Module for "time and attendance" would be "cost neutral" or a "slight increase" when the increase was in fact substantial.

  e.  Representing that the System would be implemented in a timely manner ("Months not years") to enable Hospital to receive the Medicare and Medicaid Electronic Health Record incentive payments.

10

f. By abandoning the implementation of the System after receiving $1,290,000 from Hospital.

52. As a direct and proximate result of Cerner's breach of their covenant of good faith and fair dealing, Hospital has sustained monetary damages in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count IV against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

## COUNT V - NEGLIGENCE

53. Hospital incorporates by reference paragraphs 1 through 52 of its Petition as if fully set forth herein.

54. In offering to implement the System and entering an Agreement to implement the System, Hospital had a close relationship with Cerner's employees who were principally involved in selling the System, managing its implementation, directly involved with its implementation.

55. Hospital relied upon the represented experience and proficiency of Cerner and its employees to implement the System as Hospital lacked the requisite knowledge and sophistication to design, develop and implement solutions comparable to the System.

56. Cerner possessed a fiduciary relationship with Hospital, rather than a mere distant business relationship.

57. As a result, Cerner owed certain duties to Hospital, including but not limited to a duty to perform in accordance with industry standards.

11

58.   Cerner breached these duties by:

    a.  Negligently assigning incompetent staff to implement the System.

    b.  Negligently implementing the System and in fact did so below a level that is required by common industry standards.

59.   As a direct and proximate result of Cerner's negligence, Hosptial has sustained and suffered damages in an amount in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count V against the Defendant Cerner for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

## COUNT VI – BREACH OF FIDUCIARY DUTY

60.   Hospital incorporates by reference paragraphs 1 through 59 of its Petition as if fully set forth herein.

61.   In offering to implement the System and entering an Agreement to implement the System, Hospital had a close relationship with Cerner's employees who were principally involved in selling the System, managing its implementation, directly involved with its implementation.

62.   Hospital relied upon the represented experience and proficiency of Cerner and its employees to implement the System as Hospital lacked the requisite knowledge and sophistication to design, develop and implement solutions comparable to the System.

63.   As a result of the represented knowledge, sophistication and experience, Hospital relied heavily on the representations and advice of Cerner and Cerner knew they were relying upon such advice.

12

64.     Cerner possessed a fiduciary relationship with Hospital, rather than a mere distant business relationship.

65.     Hospital relied upon the representations and advice of Cerner, all to its great financial detriment.

66.     As a result, Cerner owed certain duties to Hospital, including but not limited to a duty to perform in accordance with industry standards.

67.     Cerner breached these duties by:

   a.  Negligently assigning incompetent staff to implement the System.

   b.  Negligently implementing the System and in fact did so below a level that is required by common industry standards.

68.     As a direct and proximate result of Cerner's negligence, Hospital has sustained and suffered damages in an amount in excess of $75,000.

WHEREFORE, for the foregoing reasons, Plaintiff Hospital prays for judgment Count VI against the Defendant for money damages in excess of $75,000; prejudgment interest, post-judgment interest at the statutory rate, attorneys' fees, costs, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

THE FORBES LAW GROUP, LLC

Frankie J. Forbes, KS #20725
Blane R. Markley, KS # 23262
10740 Nall Avenue, Suite 330
Overland Park, KS 66211
Telephone: 913-341-8609
Facsimile: 913-341-8606
ATTORNEYS FOR PLAINTIFF

13

Ex. C

## IN THE DISTRICT COURT OF CRAWFORD COUNTY, KANSAS
### CIVIL DIVISION

**HOSPITAL DISTRICT NO. 1 OF
CRAWFORD COUNTY, KANSAS,
d/b/a GIRARD MEDICAL CENTER,**

**Plaintiff,**

v.

**Case No. 11-CV-304P
Chapter 60**

**CERNER CORPORATION,**

**Defendant.**

### NOTICE OF REMOVAL

Please take notice that Defendant Cerner Corporation has file a Notice of Removal, a copy of which is attached, in the office of the Clerk of the United States District Court for the District of Kansas, on January 13, 2012. Pursuant to 28 U.S.C. § 1446(d), this Court may not proceed any further on this action.

Dated: January 13, 2012.

SHOOK, HARDY & BACON L.L.P.

By: ___*/s/ Bradley Bodamer*___
A. BRADLEY BODAMER, KS # 11468
2555 GRAND BLVD.
KANSAS CITY, MO 64108-2613
P: 816.474.6550
F: 816.421.5547
bbodamer@shb.com
ATTORNEYS FOR DEFENDANT
CERNER CORPORATION

4852672 v1

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that the foregoing document was deposited in the US mail, postage pre-paid, on this 13th day of January 2012, addressed to the following:

Frankie J. Forbes
Blane R. Markley
The Forbes Law Group, LLC
10740 Nall Avenue, Suite 330
Overland Park, KS 66211
P: 913.341.8609
F: 913.341.8606
Attorneys for Plaintiff

/s/ *Bradley Bodamer*
A. Bradley Bodamer

4852672 v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HOSPITAL DISTRICT NO. 1 OF** ) | |
| **CRAWFORD COUNTY, KANSAS,** ) | |
| **d/b/a GIRARD MEDICAL CENTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.** _____ _____ |
| ) | **Crawford County Court No. 11CV304P** |
| **CERNER CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## NOTICE OF REMOVAL

Defendant Cerner Corporation ("Cerner") files this Notice of Removal of this lawsuit from the District Court of Crawford County, Kansas, to the United States District Court for the District of Kansas pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

1.    On December 6, 2011, Plaintiff Hospital District No. 1 of Crawford County, Kansas, d/b/a Girard Medical Center ("Plaintiff"), filed its Petition for Damages against Cerner. The case is styled *Hospital District No. 1 of Crawford County, Kansas, d/b/a Girard Medical Center v. Cerner Corporation*, No. 11CV304P.

2.    On December 16, 2011, Cerner was served with a copy of a summons and Plaintiff's Petition. The time to remove this action has not expired, and no previous application for removal has been made.

3.    Plaintiff is a county hospital in the state of Kansas, located at 302 North Hospital Drive, Girard, Kansas 66743. *See* Petition for Damages ("Petition"), ¶ 1 (attached as Ex. A). Plaintiff is a citizen of the state of Kansas.

1

4835349 v1

4. Cerner is a Delaware Corporation with its principal place of business located at 2800 Rock Creek Parkway, Kansas City, Missouri 64117. Cerner is a citizen of the states of Delaware and Missouri.

5. Plaintiff is seeking damages in excess of $75,000. *See* Petition, ¶¶ 37, 43, 48, 52, 59, and 68.

6. Based on the information set forth above, this Court has original diversity jurisdiction under 28 U.S.C. § 1332.

7. Pursuant to 28 U.S.C. § 1446, a copy of all process, pleadings, and orders served upon Cerner are attached as Exhibit B.

8. Thirty days have not passed since Cerner's receipt of the initial pleading in this case, and removal is timely under 28 U.S.C. § 1446(b).

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the clerk of the District Court of Crawford County, Kansas, with written notice submitted to Plaintiff. A copy of the notice to the state court is attached as Exhibit C.

10. This action is being removed to the United States District Court for the district where the action is pending.

WHEREFORE Defendant Cerner Corporation respectfully requests that Plaintiffs' Petition for Damages be removed, pursuant to 28 U.S.C. § 1441(a), from the District Court of Crawford County, Kansas, to the United States District Court for the District of Kansas on the basis of this Notice of Removal, and that this Court take jurisdiction of this action to the exclusion of any further proceedings in the District Court of Crawford County, Kansas.

Date: January 13, 2012

2

SHOOK, HARDY & BACON L.L.P.

By: ___/s/ Bradley Bodamer___
A. BRADLEY BODAMER, KS #11468
2555 GRAND BLVD.
KANSAS CITY, MO 64108-2613
P: 816.474.6550
F: 816.421.5547
bbodamer@shb.com
ATTORNEYS FOR DEFENDANT
CERNER CORPORATION

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that the foregoing document was served this 13th day of January 2012, on the parties listed below in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules:

Frankie J. Forbes
Blane R. Markley
The Forbes Law Group, LLC
10740 Nall Avenue, Suite 330
Overland Park, KS 66211
P: 913.341.8609
F: 913.341.8606
Attorneys for Plaintiff

The Clerk of the District Court for Crawford County, Kansas
Crawford County District Court
602 N. Locust
Pittsburg, Kansas 66762
P: 620.231-0380
F: 620.231.0316

___/s/ Bradley Bodamer___
A. Bradley Bodamer

3

4835349 v1